UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DALE EDWARD FLANAGAN, | Case No. 2:09-cv-00085-KJD-GWF |
| Petitioner, | ORDER |
| v. | |
| WILLIAM GITTERE, *et al.*, | |
| Respondents. | |

Pending before the court is respondents' motion to dismiss (ECF No. 131) in response to petitioner's second amended petition for writ of habeas corpus (ECF No. 127). With their motion to dismiss, respondents argue petitioner Flanagan's habeas claims are untimely, unexhausted, procedurally defaulted, moot, and/or not cognizable in this proceeding. For reasons that follow, the motion to dismiss will be granted, in part, and denied, in part.

I.      BACKGROUND

In October 1985, a jury in the Eighth Judicial District Court for Clark County, Nevada, found Flanagan guilty of several felony counts, including two counts of first degree murder with use of a deadly weapon. Flanagan and several co-defendants had been charged with breaking into the home of Flanagan's grandparents, Carl and Colleen Gordon, and murdering them. After a three-day penalty phase hearing, the jury imposed a sentence of death on the murder counts. A judgment of conviction was entered on December 18, 1985. Flanagan appealed.

In May 1988, the Nevada Supreme Court affirmed the guilt phase convictions but

reversed the death sentences and remanded for a new penalty phase for Flanagan and co-defendant Randolph Moore based upon prosecutorial misconduct. A second penalty phase hearing also resulted in a verdict of death. The court issued the judgment of conviction on July 31, 1989.

Flanagan initially waived a direct appeal, but after appointment of counsel to address the validity of the waiver of appellate rights, he proceeded with the direct appeal. On April 30, 1991, the Nevada Supreme Court affirmed the sentences for Flanagan and co-defendant Moore in a consolidated opinion. However, the United States Supreme Court vacated the decision and remanded for reconsideration, in light of the recently decided *Dawson v. Delaware*, 503 U.S. 159 (1992), due to evidence presented at the second penalty hearing regarding the defendants' occult beliefs and activities. *Flanagan v. Nevada*, 503 U.S. 931 (1992).

On remand, the Nevada Supreme Court found admission of the evidence unconstitutional and remanded for a third penalty hearing. Despite state petitions attempting to stay the proceedings, Flanagan and Moore were sentenced to death by a jury for a third time. The court issued the judgment of conviction on July 11, 1995. Flanagan and Moore appealed.

The Nevada Supreme Court consolidated the direct appeals and the appeals from denials of state habeas relief for both defendants. On December 20, 1996, the Nevada Supreme Court affirmed the convictions and sentences and the lower court's denial of habeas relief. *Flanagan v. State*, 930 P.2d 691 (Nev. 1996).

In May 1998, Flanagan filed a pro se state habeas petition that was followed by a counseled supplemental petition. The state district court held an evidentiary hearing in February 2002 and entered a final decision denying relief in August 2002. Flanagan appealed. On February 22, 2008, the Nevada Supreme Court entered an order affirming the lower court's denial of relief.

Flanagan initiated this federal habeas proceeding on January 13, 2009. On recommendation from the Federal Public Defender for Nevada, the court appointed Mark Olive to represent Flanagan. In February 2011, Flanagan filed an amended petition for writ of habeas corpus containing 31 claims for relief.

Respondents moved to dismiss the petition arguing that it contained unexhausted claims and that portions of the petition failed to provide sufficient detail or state a claim for relief. On August 23, 2012, this court granted Flanagan's motion for stay pending the conclusion of state-court habeas corpus proceedings. On September 28, 2012, Flanagan filed a second petition for writ of habeas corpus in the state district court. On July 22, 2016, the Nevada Supreme Court entered an order affirming the lower court's denial of that state petition on procedural grounds.

Proceedings herein were reopened in December 2016. On August 23, 2018, Flanagan filed a second amended petition for writ of habeas corpus, in response to which respondents filed the motion to dismiss now before the court for decision.

II.     TIMELINESS

1.   Standards.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id*. Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). Applying Federal Rule of Civil Procedure 15(c)(1)(B) in the habeas context, the Court held that an amended petition "does not relate back ... when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. Instead, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id*. at 663-64.

2.   Analysis.

Respondents concede that Flanagan filed his initial petition within the one-year filing

period under 28 U.S.C. § 2244(d). They argue, however, that both of Flanagan's amended petitions were filed after the one-year period had elapsed and that claims in his second amended petition – Claims 1 and sub-claims within Claim 5 -- are time-barred from federal court review because those claims do not "relate back" to his initial petition. Respondents also argue that the remaining claims in Flanagan's second amended petition are also untimely because they incorporate the allegations supporting all other claims, including Claim 1 and the portions of Claim 5 that are untimely.

Flanagan concedes that the one-year statute of limitations period for most of his claims expired prior to filing his first amended petition. He argues that Claims 1 and the relevant portions of Clam 5 are, nonetheless, timely because either a different triggering date applies or they are sufficiently related to a timely claim.

*Claim 1*

In Claim 1, Flanagan alleges State knowingly presented impeachable and false evidence against him that was produced by a police agent using coercion, threats promises, and money, in violation of Flanagan's federal constitutional rights. Respondents argue the claim does not relate back because it is premised on the alleged influence Robert Peoples had on one of the State's primary witnesses, Angela Saldana, Peoples's niece. As respondents point out, Peoples is not mentioned in Flanagan's initial petition. ECF No. 5.

Flanagan argues that the claim relates back to Claims 1 and 2 in his initial petition. Those claims contain comprehensive allegations regarding the State's misconduct including witness intimidation and coercion, improper use of Angela Saldana as a police agent, withholding exculpatory and impeachment evidence, and improper inducements provided to key witnesses. ECF No. 5 at 13-27. Claims 1 and 2 of the initial petition are essentially the same claims Flanagan presents as Claims 2 and 3, respectively, in his second amended petition. ECF No. 127 at 47-63.

The factual core of Claim 1 in the second amended petition is Robert Peoples's alleged role as a police informant and his collusion with the police in developing false or unreliable testimony from Angela Saldana. This core of operative facts is absent from Flanagan's

4

initial petition. Thus, the claim does not relate back to a timely-filed petition.

Alternatively, Flanagan argues Claim 1 is timely under 28 U.S.C. § 2244(d)(1)(D) because the one-year statute of limitations began on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Flanagan points to locating Wendy C. Mazaros and her daughter, Amy Hanley-Peoples, in July 2010 as the triggering point under § 2244(d)(1)(D). Mazaros was Angela Saldana's aunt, married to Robert Peoples, and, according to her declaration, living together with Robert, Angela, and Amy during the time Flanagan was being investigated in relation to the murder of his grandparents. ECF No. 47-7 at 30-35.

Based on its review of the record, this court is not persuaded that locating Hanley-Peoples and Mazaros revealed the factual predicate of Claim 1. No later than May 2000, if not long before, Flanagan was aware of Robert Peoples's relationship to Angela Saldana, his alleged role as a "double agent" for the Las Vegas Metropolitan Police Department, and his alleged close friendship with Beecher Avants, who was the Chief Investigator for the Clark County District Attorney's Office at the time of the Gordon murders. ECF No. 73-4 at 23-25. The declarations of Hanley-Peoples and Mazaros contain a relatively small portion of the information alleged in support of Claim 1. ECF No. 47-7 at 27-35.[1]

Flanagan claims that Hanley-Peoples and Mazaros provided "triggering facts and information" that caused him to "beg[i]n the investigation of Robert Peoples and locate[] the information contained in Claim 1." ECF No. 150 at 27. Claim 1 in the second amended petition first appeared in Flanagan's first amended federal petition, filed approximately seven months after Flanagan's investigator claims to have first located Mazaros and his daughter. ECF No. 46 at 20-48; ECF No. 47-7 at 36. The court is not convinced that the vast amount of information regarding Robert Peoples alleged in Claim 1 was the product of an investigation initiated in July 2010. Moreover, if locating Mazaros and her daughter did in fact provide the catalyst for Claim 1, Flanagan has not demonstrated that he exercised "due diligence" between the time his

---

[1] Moreover, the court views the declaration of Hanley-Peoples with more than a little skepticism given that she recounts events that occurred when she was 8 years old more than 25 years after the fact.

5

investigator unsuccessfully attempted to locate Mazaros (formerly Wendy Peoples) in 2000 and July 2010. ECF No. 47-7 at 36. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012).

For the foregoing reasons, Claim 1 is time-barred.

*Claim 5*

In Claim 5, Flanagan alleges he was deprived of effective assistance of counsel, in violation of his constitutional rights, due to numerous errors and omissions by counsel. Respondents argue that several of Flanagan's sub-claims within Claim 5 fail to relate back to his initial petition.[2]

Paragraphs 6(f) and 6(g) -- Within a larger claim in paragraph 6 of Claim 5 that counsel failed to conduct a complete and thorough investigation of possible defenses, Flanagan faults counsel for failing to dispute the State's theory of the shootings of Flanagan's victims, as provided by the State's witnesses, Thomas Akers and Angela Saldana, (6(f)) and failed to develop and present evidence that refuted the State's theory that Flanagan held Colleen Gordon down and shot her (6(g)).

Respondents argue that paragraphs 6(f) and 6(g) present specific facts that were not included with Flanagan's ineffective assistance of counsel (IAC) claim in his initial petition. Relation back does not require, however, that the facts in the original and amended petitions be stated in the same level of detail. *Ross v. Williams*, 950 F.3d 1160, 1168 (9th Cir. 2020). Flanagan alleged in his initial petition that counsel was ineffective by to discredit the State's witnesses and to exploit "inconsistencies between testimony and physical evidence, such as blood spatters, fingerprints, and bullet trajectories." ECF No. 5 at 34-35. Paragraphs 6(f) and 6(g) do not allege new grounds for relief that differ in either time or type from allegations the initial petition. Accordingly, they relate back to the initial petition and are, therefore, not time-barred.

Paragraph 22 -- In this paragraph, Flanagan alleges ineffective assistance based on trial counsel's failure to seek a continuance in order to have necessary witnesses in attendance. The same paragraph appears in Flanagan's initial petition. ECF No. 5 at 42. Respondents argue that,

---

[2] In their reply to Flanagan's opposition (ECF No. 159), respondents withdraw their relation back argument for some of the sub-claims in Claim 5. With one exception, those claims are omitted from the following discussion.

even so, the claim does not relate back because the paragraph cites to, and relies upon, trial counsel's affidavit to provide supporting facts and the affidavit was not included with the initial petition. According to respondents, there can be no relation back because, without the affidavit, the claim in the initial petition is conclusory. As pointed out by the court in *Ross*, however, it is sufficient for relation back that "an occurrence was only '*attempted* to be set out' in the original pleading, which necessarily contemplates that the original pleading may be inadequately pleaded yet still support relation back." *Ross*, 950 F.3d at 1170 (emphasis in original). On that basis, paragraph 22 of Claim 5 relates back to the initial petition.

Paragraph 27 -- In this paragraph, Flanagan alleges ineffective assistance based on trial counsel's failure to request special instructions regarding the elements of burglary, robbery, escape, and attempt; failure to develop and present evidence that the robbery and burglary were incidental to the murder; and failure to object to the erroneous instructions on parole and modification of sentences. The core operative facts supporting this claim do not appear in Flanagan's initial petition. Thus, the claim does not relate back and, therefore, will be dismissed as untimely.

Paragraph 34 -- In this paragraph, Flanagan alleges ineffective assistance based on trial counsel's failure to ensure that the proceedings be conducted in public, the proceedings be conducted on the record, and the record compiled on appeal, be accurate, reliable, and complete. Respondents have withdrawn their argument as to relation back, but contend the claim is conclusory. The court reserves judgment on that argument pending a final decision on the merits.

*Incorporation of other claims*

Respondents argue that every claim in Flanagan's second amended petition incorporates Claim 1 and untimely portions of Claim 5 and, as a result, all of those claims are also untimely because they too fail to relate back. In this court's view, however, such incorporation is not part of the core of operative facts supporting the individual claim.[3] Thus, this argument is without merit.

---

[3] See discussion in Section III.2., below.

III.    EXHAUSTION

1.  <u>Standards</u>.

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy*, 455 U.S. at 520).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988). On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" will not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994).

2. Analysis.

Respondents argue that Flanagan failed to fully exhaust any of the claims contained in his second amended habeas petition.

*Incorporation by Reference to Other Claims*

Respondents first argue that every claim in Flanagan's second amended petition is unexhausted because the first paragraph of each claim incorporates the facts and allegations of every other claim. Respondents note that Flanagan did not present his claims in this manner to the Nevada Supreme Court.

The paragraph at issue states:

> Those facts and allegations set forth in each paragraph of this Petition and the state court pleadings and exhibits are incorporated by reference as if fully set forth herein to avoid unnecessary duplication of relevant facts.

ECF No. 127 at 24, *passim*. Flanagan attempts to incorporate not only all other facts and allegations in the petition but also all facts and allegations in state court pleadings and exhibits. The scope of the paragraph is so broad that it is meaningless in the context of an individual habeas claim. *See Mayle*, 545 U.S. at 661, (observing that Rule 2(c) of the Habeas rules requires pleading "separate congeries of facts" in support of each ground for relief). Thus, rather than fundamentally alter a claim previously presented to the state court, the paragraph is a nullity that the court will disregard. *See* Fed. R. Civ. P. 12(f) (empowering the court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter").

*Final Two Paragraphs of Every Claim*

Respondents also argue that the final two paragraphs of every claim are unexhausted. In the final paragraph of each claim, Flanagan alleges that appellate counsel was ineffective for preserving any portion of the claim for judicial review. As discussed below in relation to Claim 23, only the ineffective assistance of appellate counsel claims presented in Flanagan's first state habeas proceeding are exhausted.

In the penultimate paragraph of every claim (except for Claims 1, 30, and 31), Flanagan alleges the state court improperly deprived him of the resources necessary to fully develop the facts in support of the claim. Here again, Flanagan's rote inclusion of this identical allegation

with nearly every claim, without elaboration as to how it applies to the particular claim, makes it surplusage that the court will disregard.

*Individual Claims*

Respondents further allege the that the following claims are either partially or fully unexhausted.[4]

CLAIM 2 -- <u>The State Engaged in Outrageous Government Misconduct and Overreaching and Failed to Disclose Material Exculpatory and Impeachment Evidence</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that some of the legal theories – violation of the right to present a defense, confrontation, and compulsory process – were not included when Flanagan presented a similar claim in his first state habeas proceeding. Thus, according to respondents, the claim was not fully exhausted until it was presented in Flanagan's procedurally-defaulted second state habeas proceeding.

Respondents are correct. The aforementioned legal theories omitted were, in fact, omitted from the first habeas state habeas proceeding and, therefore, not exhausted in that proceeding. ECF No. 77-1 at 22-34. *See Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (holding that a case's citation to the Sixth Amendment right to confront witnesses was insufficient to exhaust a claim addressing petitioner's federal rights to due process and to present a defense) (citing *Anderson v. Harless*, 459 U.S. 4, 7 n.3 (1982)). The claim was otherwise exhausted in Flanagan's first state habeas proceeding. ECF No. 72-2 at 8-16; ECF No. 77-1 at 22-34. The claim was fully exhausted in Flanagan's second state habeas proceeding. ECF No. 132-35 at 49-63.

CLAIM 5 -- <u>Ineffective Assistance of Trial Counsel</u>.

With Claim 5, Flanagan alleges that his trial counsel was ineffective at all critical stages of his criminal proceedings. Respondents concede that Flanagan fully exhausted the entire claim in his second state habeas proceeding, but identify several factual allegations that were not presented in Flanagan's first state habeas proceeding. In many instances, the question is whether

---

[4] In their reply to Flanagan's opposition (ECF No. 159), respondents withdrew their exhaustion argument for several claims. In most instances, those claims are omitted from the following discussion.

additional allegations fundamentally alter the claim presented to the state court in the first proceeding.

(1)     Paragraph 6(f) – As discussed above, this paragraph alleges counsel was ineffective by failing to dispute the State's theory of the shootings of Flanagan's victims, as provided by the State's witnesses, Thomas Akers and Angela Saldana. The allegations contained in paragraph 6(f) do not fundamentally alter the IAC claim presented to the Nevada Supreme Court in his first state habeas proceeding. *See* ECF No. 72-2 at 22-27; ECF No. 77-1 at 42-45, 51-52.

(2)     Paragraph 6(g) – As noted above, Flanagan alleges in this paragraph that counsel failed to develop and present evidence that refuted the State's theory that Flanagan held Colleen Gordon down and shot her. As with paragraph 6(f), the allegations contained in paragraph 6(g) do not fundamentally alter the IAC claim presented to the Nevada Supreme Court. *Id.*

(3)     Paragraph 6(h)(in part) – This paragraph challenges counsel's performance with respect to the testimony of Wayne Wittig, who testified about Flanagan's involvement with a Satanic cult. One of the allegations is that effective counsel would have discovered that Wittig's testimony "mirrored a story" that had previously appeared in the local newspaper. This allegation does not fundamentally alter Flanagan's IAC claim presented to the Nevada Supreme Court in his first state habeas proceeding. *See* ECF No. 77-1 at 46.

(4)     Paragraph 6(i) – This paragraph alleges that counsel was ineffective by not interviewing Wittig prior to trial and that, had counsel done so, he would have learned that the State promised benefits to key witnesses. This claim was not presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding. Instead, the claim was exhausted in his second state habeas proceeding. ECF No. 132-35 at 73.

(5)     Paragraph 6(j)(in part) – This paragraph alleges that counsel was ineffective by failing to investigate and impeach Saldana. One of the allegations is that counsel failed to discover that Saldana was a prostitute and had a sexual relationship with a police officer. This allegation does not fundamentally alter the IAC claim Flanagan presented to the

11

Nevada Supreme Court in his first state habeas proceeding. *See* ECF No. 77-1 at 25, 46.

(6)     Paragraph 6(k) – In this paragraph, Flanagan alleges that counsel was ineffective he failed to investigate or present evidence that Flanagan was not involved in a conspiracy or cross examine the prosecution witnesses on conflicting versions of events surrounding the alleged conspiracy. This claim was not presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding. Instead, the claim was exhausted in his second state habeas proceeding. ECF No. 132-35 at 73-74.

(7)     Paragraph 6(l)(in part) – This paragraph alleges that counsel was ineffective by not investigating Flanagan's mental state at the time of the crime and prior to and during trial. One of the allegations is that counsel failed to cross-examine Saldana about Flanagan's alleged statements that he was on acid on the night of the murders. This allegation does not fundamentally alter the IAC claim Flanagan presented to the Nevada Supreme Court in his first state habeas proceeding. See ECF No. 77-1 at 44.

(8)     Paragraph 7(c)(in part) -- Within a larger claim in paragraph 7 of Claim 5 that counsel was ineffective by not utilizing pretrial and in limine procedures to ensure a fair trial, Flanagan alleges that counsel was ineffective in failing to exclude testimony proffered by a co-defendant, Johnny Ray Luckett, concerning witchcraft. One of the allegations is that counsel failed to file a motion in limine despite the trial court's alleged encouragement to do so. This allegation does not fundamentally alter the IAC claim Flanagan presented to the Nevada Supreme Court in his first state habeas proceeding. See ECF No. 77-1 at 45.

(9)     Paragraph 7(e) – In this paragraph, Flanagan alleges that counsel was ineffective by failing to ensure that the jury in his case was not prejudicially influenced by the substantial publicity generated by the case. Additional allegations in Flanagan's federal petition do not fundamentally alter the IAC claim Flanagan presented to the Nevada Supreme Court in his first state habeas proceeding. See ECF No. 77-1 at 44.

(10)    Paragraph 7(e)(10) – In this paragraph, Flanagan includes legal grounds for relief that were not presented to the Nevada Supreme Court – namely, violation of his right to present a defense, to confrontation and compulsory process, to enforcement of mandatory state

laws, and to a trial free from materially false and misleading evidence, and the Fourth, Fifth, and Eighth Amendments. These legal theories were not exhausted in the first habeas state habeas proceeding. Instead, they were presented in Flanagan's second state habeas proceeding. ECF No. 132-35 at 79.

(11)   Paragraph 20 --  In this paragraph, Flanagan alleges ineffective assistance based on trial counsel's failure to investigate and challenge the exclusion of African Americans from the jury pools and at all stages of jury selection. This claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 72-2 at 50-52; ECF No. 77-1 at 60-61. The claim was exhausted in that proceeding.

(12)   Paragraph 23 -- In this paragraph, Flanagan alleges ineffective assistance based on trial counsel's failure to object to the seating of two obviously biased jurors or make a motion to exclude them for cause. This claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 72-2 at 127-29; ECF No. 77-1 at 92-92. The claim was exhausted in that proceeding.

(13)   Paragraph 29(in part) – In this paragraph, Flanagan alleges counsel was ineffective in failing to discover that a man named Robert Ramirez could provide evidence exculpating Flanagan. This claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 77-1 at 17, 51-52. The claim was exhausted in that proceeding.

(14)   Paragraph 33 – In this paragraph, Flanagan alleges counsel was ineffective by failing to exclude inadmissible evidence from Flanagan's trial. This claim was not presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding. Instead, the claim was exhausted in his second state habeas proceeding. ECF No. 132-35 at 91-92.

(15)   Paragraph 35 – This paragraph alleges ineffective assistance of counsel with respect to the presentation of mitigating evidence in the penalty phase of Flanagan's trial. This claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 72-2 at 29-42; ECF No. 77-1 at 47-54. The claim was exhausted in that proceeding.

(16)   Paragraph 41 – In this paragraph, Flanagan alleges that trial counsel was ineffective by not preparing and presenting the evidence of a prison adjustment expert. This

claim was not presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding. Instead, the claim exhausted in his second state habeas proceeding. ECF No. 132-35 at 107.

CLAIM 6 -- <u>Denial of Right to Be Present at Trial and to Not Be Tried When Unable to Comprehend Critical Portions of the Proceedings or to Communicate With Counsel</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that a similar claim was presented in Flanagan's first state habeas proceeding but some of the legal theories – violations of the Fourth, Fifth, and Eighth Amendments – were not included.

Respondents are correct with respect to the Fourth and Eighth Amendments, but Flanagan alleged violations of the Fifth, Sixth, and Fourteenth Amendments in his first state habeas proceeding. ECF No. 77-1 at 54-57. The legal theories omitted from the first habeas state habeas proceeding are unexhausted.

The court rejects respondents' additional argument that Claim 6 should be dismissed for failure to state a claim. While habeas petitions are held to heightened pleading requirements, Claim 6 meets the requirement because it states facts "that point to a 'real possibility of constitutional error.'" *See* Habeas Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

CLAIM 7 -- <u>Trial Took Place in Unfairly Prejudicial Atmosphere and Trial Failed to Change Venue to Location Where Fair Trial Would Have Been Possible</u>. As with Claim 6, Flanagan presented a similar claim to the state court in his first habeas proceeding but omitted some of the legal theories he alleges in his federal petition. Specifically, he omitted violations of the Fourth and Eighth Amendments, the right to present a defense, the right to confrontation and compulsory process, and the right to enforcement of mandatory state laws. ECF No. 77-1 at 57-60. Thus, those theories are unexhausted.

Respondents also argue that Flanagan failed to exhaust all the factual allegations contained within Claim 7. The court disagrees. The claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 72-2 at 47-49; ECF No. 77-1 at 57-61. The claim was exhausted in that proceeding.

And, for the same reason cited in relation to Claim 6, the court rejects respondents' additional argument that Claim 7 should be dismissed for failure to state a claim.

CLAIM 8 -- <u>Trial Conducted Before an All-White Jury from Which African Americans Were Systematically Excluded and Unrepresented</u>. As with Claim 6, Flanagan presented a similar claim to the state court in his first habeas proceeding but omitted some of the legal theories he alleges in his federal petition. Specifically, he presented only a Sixth Amendment claim to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 77-1 at 60-61. Thus, all other theories alleged in his federal petition are unexhausted.

Respondents also argue that Flanagan failed to exhaust all the factual allegations contained within Claim 8. The court disagrees. The claim was fairly presented to the Nevada Supreme Court in his first state habeas proceeding. ECF No. 72-2 at 50-52; ECF No. 77-1 at 61-62. The claim was exhausted in that proceeding.

And, for the same reason cited in relation to Claim 6, the court rejects respondents' additional argument that Claim 8 should be dismissed for failure to state a claim.

CLAIM 9 -- <u>The Trial Court Unlawfully Deprived Petitioner of a Peremptory Challenge to a Prospective Juror</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that a similar claim was presented in Flanagan's first state habeas proceeding but some of the legal theories – violations of the Fifth and Eighth Amendments and a violation of the Sixth Amendment based on allegations other than ineffective assistance of counsel – were not included.

The court agrees with respect to the Fifth and Eighth Amendment, but not the Sixth Amendment. Flanagan's reference to the "federal constitutional guarantee[]"of a "trial before an impartial jury" along with a citation to Nevada case, *Anderson v. State*, 406 P.2d 532 (Nev. 1965), that analyzed the issue under the Sixth Amendment, was sufficient to establish exhaustion of a Sixth Amendment claim apart from ineffective assistance of counsel. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

CLAIM 10-- <u>The Trial Court Unlawfully Refused to Grant Challenges for Cause Against Jurors Who Did Not Meet Constitutional Standards of Impartiality</u>. Respondents argue that

Flanagan has added factual allegations in his federal petition that fundamentally alter the claim presented in his first state habeas proceeding. The court disagrees. The claim was fully exhausted in that proceeding. ECF No. 72-2 at 95-96; ECF No. 77-1 at 81-82.

CLAIM 12-- <u>The Trial Judge Improperly Directed That Certain Defense Objections and Motions Must Be Made Directly to the Court Reporter, Rather Than to the Trial Judge, and Outside the Presence of the Jury and Petitioner</u>. Respondents argue that Flanagan added factual allegations in federal court that fundamentally alter the claim presented in Flanagan's first state habeas proceeding. The court disagrees. The claim was fully exhausted in that proceeding. ECF No. 72-2 at 55-56; ECF No. 77-1 at 62-63.

CLAIM 13-- <u>The Charging Document Did Not Specifically Apprise Petitioner of Those Acts He Was Alleged to Have Committed</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that a similar claim was presented in Flanagan's first state habeas proceeding but some of the legal theories – violations of the Eighth Amendment and a federally protected liberty interest – were not included.

The court agrees with respect to the Eighth Amendment claim, but views Flanagan's liberty interest argument to be subsumed within his Due Process Clause argument that he articulated in his opening brief in his first state habeas proceeding. ECF No. 77-1 at 84-85. Thus, he exhausted that aspect of his claim in his first state habeas proceeding.

CLAIM 14 -- <u>The Trial Court Failed to Sever Petitioner's Trial from His Co-Defendants Which Resulted in the Use of Inadmissible Evidence to Convict Petitioner of First-Degree Murder and Deprived Him of a Reliable Sentence</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that, on direct appeal, the only federal claim Flanagan presented was a Sixth Amendment Confrontation Clause claim with respect to paragraph 10 of Claim 14, which alleges constitutional errors resulting from the trial court's improper admission of hearsay testimony concerning the disposal of rifles used in the crime. The court agrees that Flanagan's citation to *United States v. Fielding*, 645 F2d 719 (9th Cir. 1981) exhausted the allegations in paragraph 10, but only as to a Confrontation Clause claim. ECF No. 63-3 at 19-27.

Respondents further argue that Flanagan presented a similar claim in his first state habeas proceeding but failed to exhaust claims under the Fourth and Eighth Amendments. The court agrees. ECF No. 77-1 at 88-89. The claim was otherwise exhausted in that proceeding.

CLAIM 15 -- <u>The Petitioner was Absent From Critical Stages of the Criminal Proceeding</u>. Respondents argue the claim was not exhausted in Flanagan's his first state habeas proceeding because the claim presented in that proceeding did not include the allegation that Flanagan did not waive his presence during all the critical stages. Respondents are incorrect. ECF No. 72-2 at 107; ECF No. 77-1 at 85-86.

And, for the same reason cited in relation to Claim 6, the court rejects respondents' additional argument that Claim 15 should be dismissed for failure to state a claim.

CLAIM 16 -- <u>The Trial Court Failed to Conduct All Proceedings in Public and Failed to Ensure Creation of a Concrete Record of the Trial by Having Such Proceedings Reported or Otherwise Recorded</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that Flanagan presented a similar claim in his first state habeas proceeding but omitted claims based on the Fifth or Eighth Amendments. Respondents are correct. ECF No. 77-1 at 86-87.

Respondents further argue that Flanagan failed to exhaust many of the factual allegations supporting Claim 16. The court disagrees. *Id*.; ECF No. 72-2 at 108-09. Allegations added to Claim 16 did not fundamentally alter the claim presented to the Nevada courts.

And, for the same reason cited in relation to Claim 6, the court rejects respondents' additional argument that Claim 16 should be dismissed for failure to state a claim.

CLAIM 17 -- <u>Petitioner Was Seen by the Jurors in Shackles and in the Presence of Armed Guards in the Courtroom</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that Flanagan presented a similar claim in his first state habeas proceeding but omitted several of those legal grounds.

Flanagan's opening brief to the Nevada Supreme Court included alleged violations of his rights under the Fifth, Sixth Amendment (including right to effective assistance of counsel), and Fourteenth Amendments. ECF No. 77-1 at 46-47, 90-91. The remaining legal theories are

unexhausted.

CLAIM 18 -- <u>The Jurors Were Misinformed About Their Responsibilities During Trial</u>.

With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that Flanagan presented a similar claim in his first state habeas proceeding but omitted claims based on the Fifth or Eighth Amendments. Respondents are correct. ECF No. 77-1 at 65-67; ECF No. 77-3 at 29. Those legal theories are unexhausted.

Respondents further argue that Flanagan failed to exhaust many of the allegations supporting Claim 18. The court disagrees. *Id.*; ECF No. 72-2 at 63-75. Allegations added to Claim 18 did not fundamentally alter the claim presented to the Nevada courts.

CLAIM 19-- <u>The Use of Three Aggravating Circumstances Was Unconstitutional</u>. With this claim, Flanagan challenges each of the three aggravating circumstances supporting his death penalty and asserts numerous legal grounds for relief.

With regard to the "knowing risk of death to more than one person" aggravator, respondents argue that Flanagan challenged the aggravator in his direct appeal, but did not include many of the legal and factual allegations he presents with his claim in this court. Respondents are correct that, on direct appeal, Flanagan did not exhaust claims that his trial and appellate counsel were ineffective in failing to challenge the aggravator. ECF No. 71-1 at 47-50. Respondents are also correct that Flanagan presents allegations that fundamentally alter the claim presented on direct appeal, but only the allegations as to a violation of Flanagan's due process right to a state-created liberty interest – i.e., paragraph 2(h) of Claim 19.

In his first state habeas proceeding, Flanagan exhausted the ineffective assistance of counsel component, but not the liberty interest claims. ECF No. 77-1 at 68 n. 46.

With regard to the "commission of a burglary" aggravator, Flanagan exhausted this claim in his first state habeas proceeding. ECF No. 72-2 at 78-80; ECF No. 77-1 at 70; ECF No. 77-2 at 129-39. Flanagan exhausted claims with respect to the "commission of a robbery" aggravator on direct appeal, save for his equal protection argument. ECF No. 71-1 at 50-52. He exhausted the equal protection claim in his first state habeas proceeding. ECF No. 77-1 at 70-71.

CLAIM 20 -- <u>The Trial Court Failed to Properly Instruct the Jury During the Sentencing Hearing</u>. With this claim, Flanagan challenges several jury instructions used by the trial court in the penalty phase of his trial.

With regard to the anti-sympathy instruction, respondents concede that Flanagan presented the claim on direct appeal, but contend he did not present an ineffective assistance of counsel claim or an allegation that the effect of the instruction was heightened by other instructions. Respondents are correct. ECF No. 71-1 at 45-47. Those claims were, however, exhausted in Flanagan's first state habeas proceeding. ECF No. 77-1 at 71-73.

Flanagan concedes he did not exhaust claims relating to instructions on unanimity for mitigating circumstances and unanimity for aggravating circumstances. He withdraws those claims from the court's consideration.

Flanagan raised a claim in his first state habeas proceeding that the trial court improperly failed to instruct the jury that it must find the elements of capital murder beyond a reasonable doubt. Respondents argue that Flanagan did not exhaust his argument as to prejudice. This court disagrees. ECF No. 77-1 at 78-80.

Flanagan includes allegations in Claim 20 that the trial court improperly allowed the prosecution to present, and jury to consider, evidence of witness intimidation and the sentences Flanagan's co-defendants received. These allegations were not presented in state court in relation to claims of instructional error. Because this court views them as irrelevant to the claim presented in Claim 20, they will be disregarded.

CLAIM 21 -- <u>The Trial Court's Pro-Prosecution Bias Infected the Trial and Swayed the Jurors to Discredit the Defense and Materially Prejudiced the Outcome of the Trial</u>. With this claim, Flanagan asserts numerous legal grounds for relief. Respondents argue that Flanagan presented a similar claim in his first state habeas proceeding but failed to exhaust the legal allegations of confrontation, compulsory process, notice of evidence, effective assistance of counsel, presumption of innocence, and violations of the Fifth, Sixth, and Eighth Amendments. The court agrees. ECF No. 77-1 at 83-84. Those theories are unexhausted.

Respondents further argue that Flanagan failed to exhaust several operative facts. The

court disagrees. *Id*.; ECF No. 72-2 at 99-100. To the extent that Claim 21 contains more detailed allegations, those allegations do not fundamentally alter the claim already presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding.

CLAIM 22 -- <u>The Nevada Supreme Court Fails to Conduct Fair and Adequate Appellate Review</u>. Respondents argue that the similar claim presented to the state court in his first state habeas proceeding was conclusory and that Flanagan failed to exhaust several factual allegations in that proceeding. In response, Flanagan suggests that his citation to *Evans v. State*, 28 P.3d 498 (Nev. 2001), was sufficient to exhaust the facts presented to the Nevada Supreme Court in that case. The court agrees. Accordingly, Claim 22 is exhausted only with respect to the allegations in paragraphs 1 through 3 and the facts discussed by the court in *Evans*.

CLAIM 23 -- <u>Ineffective Assistance of Appellate Counsel</u>. Respondents argue that Flanagan's claim that appellate counsel was ineffective for failing to raise any issue not exhausted in is first state habeas petition was not exhausted in that proceeding. The court agrees. In addition, Flanagan did not exhaust the allegation in paragraph 6 of claim 23 (regarding counsel's failure to secure a complete record for appeal) in the first state habeas proceeding. Also, any claim alleging appellate counsel was ineffective by not challenging trial counsel's performance must fail because, in Nevada, such claims are properly raised for the first time in a timely first post-conviction proceeding. *See Pellegrini v. State*, 34 P.3d 519, 534 (Nev. 2001).

CLAIM 24 -- <u>The Nevada Capital Punishment System Operates in an Arbitrary and Capricious Manner</u>. Respondents argue that Flanagan raised a similar claim on direct appeal but that it did not exhaust the legal and factual allegations presented in Claim 24. Flanagan does not dispute this argument, but contends that the claim was exhausted in his first state habeas proceeding.

With respect to that proceeding, respondents argue the Flanagan failed to exhaust all legal theories other than a violation of the right to due process and equal protection under the Fourteenth Amendment and failed to present any factual support. Respondents are correct regarding the exhaustion of legal theories, but incorrect with respect to factual allegations. ECF No. 72-2 at 101-105; ECF No. 77-1 at 84. To the extent that Claim 24 contains additional

allegations, those allegations do not fundamentally alter the claim already presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding.

CLAIM 25 -- <u>Petitioner Was Deprived of His Rights to Be Tried before a Fair and Impartial Tribunal and Have His Appeal Heard by Impartial Appellate Judges Because those Judges Are Subject to Re-Election</u>. Respondents argue that Flanagan raised a similar claim in his first state habeas proceeding but that it did not exhaust the legal and factual allegations presented in Claim 25. As to legal allegations, the court agrees that Flanagan did not exhaust a Sixth Amendment claim. ECF No. 77-1 at 92.

Flanagan did, however, exhaust the factual allegations in Claim 25. *Id.*; ECF No. 72-2 at 125-126. To the extent that Claim 25 contains additional allegations, those allegations do not fundamentally alter the claim already presented to the Nevada Supreme Court in Flanagan's first state habeas proceeding.

CLAIM 26 -- <u>The State's Egregious Misconduct That Forced Petitioner to Endure Three Trials and Appeals Resulted in the Substantial Loss of Evidence by the Time of the Third Penalty Trial and Therefore Caused Him to Suffer an Inordinate Amount of Time on Death Row</u>. Respondents argue that Flanagan presented a similar claim on direct appeal but only as a violation of his rights under the Eighth Amendment. The court agrees. ECF No. 71-1 at 41-45. In addition, Flanagan did not exhaust any additional legal theories in his first state habeas appeal. ECF No. 77-1 at 94. Lastly, the court rejects respondents' argument that additional factual allegations in Claim 26 render it unexhausted.

CLAIM 28 -- <u>The Death Penalty Is Cruel and Unusual Punishment</u>. Respondents argue that this claim is wholly unexhausted. The court disagrees. Flanagan exhausted the claim in his first state habeas proceeding. ECF No. 72-2 at 115-16; ECF No. 77-1 at 87-88.

CLAIM 29 -- <u>The Proceedings Against Petitioner Violate International Law</u>. Respondents argue that Flanagan presented a similar claim in his first state habeas proceeding but failed to include most of the factual allegations contained in Claim 29. The court disagrees. ECF No. 72-2 at 130-33; ECF No. 77-1 at 93-94. To the extent that Claim 29 contains additional allegations, those allegations do not fundamentally alter the claim already presented to the Nevada Supreme

Court in Flanagan's first state habeas proceeding.

CLAIM 30 -- <u>Execution by Lethal Injection Violates the Constitutional Prohibition against Cruel and Unusual Punishments</u>. Flanagan withdraws this claim without prejudice to raising it in a future proceeding when the issue is ripe for judicial resolution.

CLAIM 31 – <u>Cumulative Error</u>. Respondents argue that, while Flanagan presented a cumulative error claim his first state habeas appeal and in his second state habeas petition, Claim 31 is unexhausted to the extent that it incorporates claims not presented together in one or the other proceeding. Flanagan does not directly dispute this, but, instead, asks that this court order briefing on the issue of cumulative error once it concludes that more than one constitutional error occurred. The court reserves judgment on that request until it rules upon the merits of Flanagan's petition.

*Mandatory Review Argument*

Flanagan argues that most of his claims were exhausted pursuant to Nevada's mandatory review process under Nev. Rev. Stat. § 177.055. In order to find any claims exhausted by virtue of the Nevada Supreme Court's review under Nev. Rev. Stat. § 177.055, this court must be satisfied that such review encompassed the specific factual and a federal law grounds advanced by the petitioner in his federal petition. *See Comer v. Schriro*, 463 F.3d 934, 954–56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme Court's independent review process). In allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to Arizona's statutes and case law, the Arizona Supreme Court "examines the entire record, particularly the sentencing hearing, to determine if any procedural errors occurred or other arbitrary factors influenced the sentencing court's decision to impose the death sentence," and that the court "is clearly conscious of its duty to respect the dictates of the Eighth and Fourteenth Amendments and to ensure that the death penalty is not imposed in an arbitrary and capricious fashion." *Id*. at 955. In addition, the court of appeals held that only claims that are "clearly encompassed within Arizona's independent review" and "readily apparent from the record" will be deemed impliedly exhausted. *Id*. at 956.

Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court

to apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055. *Sechrest v. Ignacio*, 943 F.Supp. 1245, 1250 (D. Nev.1996). Moreover, Flanagan has not shown that any of the claims at issue are "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. Thus, none of Flanagan's claims were exhausted on direct appeal by operation of the mandatory review statute.

*Treatment of Unexhausted Claims*

As set forth above, none of Flanagan's habeas claims are wholly unexhausted (with the possible exception of claims he has withdrawn). Except for some claims of ineffective assistance of appellate counsel, the lack of exhaustion involves, for the most part, failure to present various legal theories to the Nevada Supreme Court. As made clear by the procedural default discussion below, Nevada's procedural rules regarding timeliness (Nev. Rev. Stat. § 34.726) and successive petitions (Nev. Rev. Stat. § 34.810) would not permit the Nevada courts to consider any of these claims. Thus, these claims are "technically exhausted but will be deemed procedurally defaulted unless the petitioner can show cause and prejudice." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

## IV. PROCEDURAL DEFAULT

### 1. Standards.

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.

23

1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

2. <u>Analysis</u>.

Respondents contend that most of Flanagan's habeas claims are barred by the procedural default doctrine. First, they assert that the Nevada Supreme Court denied several claims in the

24

first state habeas corpus proceeding for failing to present the claims on direct appeal as required by Nev. Rev. Stat. § 34.810(1). Respondents cite Claims 2, 3, 6, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 27, 29, and 30 as claims defaulted in Flanagan's first state habeas proceeding. Next, respondents assert that the Nevada Supreme Court denied the claims presented in the second state petition as untimely under Nev. Rev. Stat. § 34.726, successive under Nev. Rev. Stat. § 34.810, and barred by laches under Nev. Rev. Stat. § 34.800. Respondents cite Claims 1, 2, 3, and 5 as claims defaulted in Flanagan's second state habeas proceeding.

*Adequacy of Procedural Bars*

With respect to Nev. Rev. Stat. § 34.810, there are Ninth Circuit cases holding the bar inadequate to bar federal review. *See Valerio*, 306 F.3d at 778, *Petrocelli v. Angelone*, 248 F.3d 877, 888 (9th Cir. 2001), and *McKenna*, 65 F.3d at 1488-89. Flanagan's reference to these holdings was sufficient to place the adequacy of the bar in issue. The relevant dates in *McKenna* and *Petrocelli* were 1983 and 1985. *See McKenna*, 65 F.3d at 1487-88; *Petrocelli*, 248 F.3d at 886. The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778. Respondents have "the burden of demonstrating that, since *Valerio*, state courts have begun to regularly and consistently apply § 34.810 to habeas cases." *Riley v. McDaniel*, 786 F.3d 719, 722 n.4 (9th Cir. 2015). *See also King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006).

The § 34.810 default imposed in Flanagan's first state habeas proceeding occurred when Flanagan filed his opening brief on direct appeal from the third judgment of conviction in 1995. *See Petrocelli*, 248 F.3d at 886 (citing *Fields v. Calderon*, 125 F.3d 757, 760-62 (9th Cir. 1997)). Respondents cite to numerous cases that, according to them, demonstrate the Nevada Supreme Court's regular and consistent application of § 34.810. ECF No. 159 at 121-22 n.52. Absent from their list, however, are cases relevant to the time period at issue here, that is between 1990 and 1995. Thus, respondents have not established the adequacy of § 34.810 as a procedural bar for the purpose of barring claims presented in Flanagan's first state habeas proceeding.

As for the defaults imposed in the second state habeas proceeding, however, the Ninth Circuit Court has repeatedly rejected arguments that the Nevada Supreme Court has inconsistently applied Nev. Rev. Stat. § 34.726 and has held the bar to be adequate to support

25

application of the procedural default doctrine. *See Williams v. Filson*, 908 F.3d 546, 579–80 (9th Cir. 2018); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996). Flanagan's arguments do not place the adequacy of the rule at issue, so as to shift the burden to respondents. Accordingly, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of Flanagan's defaults.

Relying on *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011), Flanagan argues that, even if adequate, the procedural bars imposed by the Nevada Supreme Court were interwoven with federal law and, therefore, not independent. In *Cooper*, the court concluded that the application of Nevada's timeliness and successiveness bars to his *Brady*[5] claim were not "independent" because "the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling the outcome of its state procedural default analysis." *Cooper*, 641 F.3d at 332. As respondents point out, however, the Nevada Supreme Court rejected Flanagan's *Brady*-based cause argument, not because he did not have a meritorious *Brady* claim, but because he "filed his petition more than two years after he discovered the basis of the claim." ECF No. 133-26 at 3. And, although the Nevada Supreme Court briefly addressed the merits of Flanagan's *Brady* claim, it did so as an alternative ruling. *Id*. at 3-4. *See Loveland*, 231 F.3d at 643–44 (holding that state ruling did not lose its independence merely because the state court ruled in the alternative on the merits).

Thus, Flanagan defaulted the claims in his second state habeas petition pursuant to an independent and adequate state procedural rule. The court is barred from reviewing any claim presented for the first time in that proceeding, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

*Cause and Prejudice*

For a default to be excused based on good cause, a petitioner must show that some objective factor external to the defense hindered his ability to comply with the state's procedural rules. *Carrier*, 477 U.S. at 488. Flanagan argues that he can demonstrate good cause based on the

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

State's failure to disclose material exculpatory and impeachment evidence and his first state post-conviction attorney's ineffectiveness.

The Supreme Court has held that the showing for cause and prejudice to overcome a procedural default parallels the second and third component of the *Brady* test such that "a petitioner shows 'cause' when the reason for his failure to develop facts in state court proceedings was the State's suppression of the relevant evidence" and "prejudice … exists when the suppressed evidence is 'material' for *Brady* purposes." *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Flanagan contends that any procedural default of Claim 1 should be excused because the State withheld evidence showing that Angela Saldana was acting as a police agent and the extent to which the prosecution was "involved in manufacturing [her] testimony." ECF No. 150 at 202. Flanagan's contention that was Saldana acting as police agent dates back to 1985 when Flanagan's counsel argued that Saldana's testimony should be excluded at trial. ECF No. 58-4 at 67-68. In his first state habeas proceeding, Flanagan alleged Saldana was a known prostitute who engaged in sexual relations with police officers and, at the behest of law enforcement, had sexual relations and began living with Flanagan in an effort to elicit incriminating statements. ECF No. 72-2 at 9-10. He further alleged in that petition that, in exchange for her testimony and cooperation, Saldana escaped prosecution for several offenses and was paid cash, which inducements were not disclosed to the defense. *Id*. at 9-10, 17-18. He also alleged that the prosecution coached and influenced witnesses, including Saldana, to shape their testimony so that it would be consistent with that of other witnesses. *Id*. at 10.

In his opposition to respondents' motion to dismiss, Flanagan does not specify what evidence had been withheld such that he was only able to obtain it between the filing of his first and second state habeas proceedings. ECF No. 150 at 201-02. The court is left to surmise it is the aforementioned information from Hanley-Peoples and Mazaros. *See* ECF No. 132-35 at 18-21. For reasons discussed above, Flanagan has not demonstrated that discovery of this information was critical to the development of the facts supporting Claim 1. Moreover, he has not shown that

the information provided by Hanley-Peoples and Mazaros was material exculpatory evidence when juxtaposed to the impeachment evidence Flanagan had already collected and presented.

Relying on *Martinez v. Ryan*, 566 U.S. 1 (2015), Flanagan alleges post-conviction counsel's ineffective representation provides cause sufficient to excuse his failure to comply with Nevada's procedural rules. In *Martinez*, the Supreme Court noted that it previously held in *Coleman*, 501 U.S. at 746-47, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse procedural default. *Martinez*, 566 U.S. at 15. The Court in *Martinez* "qualif[ed] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 8. Also, "[t]he holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id*. at 16.

As an initial matter, *Martinez* cannot serve to excuse the default of any claim that is not an ineffective assistance of trial counsel claim. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (expressly declining to extend the *Martinez* exception to allow federal courts to consider ineffective assistance of appellate counsel claims). The ineffective assistance of trial counsel claims in Flanagan's second amended petition that are procedurally defaulted are Paragraphs 6(i), 6(k), 33, and 41 of Claim 5. This court is unable to conclude that the default of these claims can be attributed to the allegedly deficient performance of counsel in Flanagan's initial post-conviction proceeding.

In *Martinez*, petitioner's counsel in his initial state collateral proceeding made no claim whatsoever that trial counsel was ineffective. *Martinez*, 566 U.S. at 6.  When petitioner, represented by new counsel, sought to raise ineffective assistance of counsel claims in a subsequent proceeding, the Arizona courts dismissed the claims based on an Arizona rule barring claims that could have been raised in a previous collateral proceeding. *Id*. at 6-7.  Thus, the

petitioner's procedural default was complete when his counsel failed to raise claims in the initial-review collateral proceeding.

This case is decidedly different. To begin with, Flanagan's counsel presented numerous well-developed trial IAC claims in his initial post-conviction proceeding. *See* ECF No. 72-2. In addition, the procedural default at issue here was not premised on the omission of claims from his initial petition but instead on the state statute of limitations, Nev. Rev. Stat. § 34.726. The default occurred because Flanagan "filed his petition … more than 14 years after remittitur issued from his direct appeal in 1998." ECF No. 133-26 at 2. As a matter of equity, this court does not accept that ineffective assistance of counsel in Flanagan's first state habeas action constitutes cause for his failure to comply with the state statute of limitations in his second state habeas action. *See Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) ("The Supreme Court in *Martinez* established an equitable rule under which the failure of an ineffective counsel or pro se petitioner to raise, in a state court initial-review collateral proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause' to excuse a state-court procedural default.").

*Actual Innocence*

Flanagan also argues that his actual innocence serves as grounds to excuse his procedural defaults. A federal court may review the merits of a procedurally defaulted claim if petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id*. To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Id*. In this regard, the petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Id*. at 324.

Flanagan contends he is actually innocent of both murder and the death penalty. With respect to the murder convictions, his actual innocence claim is premised on allegations contained in his petition that the State "manufactured" the evidence against him by intimidating, coercing, and bribing the critical witnesses who testified for the prosecution. The evidence Flanagan cites falls well short of establishing his actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *Clark v. Lewis*, 1 F.3d 814, 824 (9th Cir. 1993) (allegation that prosecution witness could have been impeached by allegedly withheld evidence did not constitute a credible claim of "actual innocence" sufficient to show that the petitioner was actually innocent); *see also Calderon v. Thompson*, 523 U.S. at 563 (newly discovered impeachment evidence, which was "a step removed from evidence pertaining to the crime itself," provided "no basis for finding" actual innocence).

Flanagan also claims that an independent analysis of the physical evidence disproves that Flanagan killed anyone. However, he fails to support this claim with "new reliable evidence" sufficient to establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

As for his actual innocence of the death penalty, Flanagan needs to demonstrate that all three of the aggravating circumstances supporting his death penalty are invalid. *See Sawyer*, 505 U.S. at 336 ("Sensible meaning is given to the term 'innocent of the death penalty' by ... a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met."); *see also Cade v. Haley*, 222 F.3d 1298, 1308 (11th Cir. 2000) ("[A] showing of actual innocence can only refer to those state-law requirements that must be satisfied to impose the death penalty, i.e., the elements of the capital crime and *minimum* required aggravating factors." (Emphasis added.)). Flanagan has not made this showing.

*Procedurally Defaulted Claims*

Based on the foregoing, this court is procedurally barred from considering claims presented for the first time in Flanagan's second state habeas proceeding. Claims 1 and paragraphs 6(i), 6(k), 7(e)(10), 33, and 41 of Claim 5 fall into this category, as do the legal

theories alleged in Claim 2 that were omitted from Flanagan's first state habeas proceeding but included in his second. In moving to dismiss Flanagan's first amended federal petition, respondents acknowledged that Claim 3 was exhausted in Flanagan's first state habeas proceeding except for the claim that he is entitled to federal relief because Nevada case law created a protected liberty interest that is enforceable by the Due Process Clause of the 14th Amendment. ECF No. 55 at 17; *see also* ECF No. 72-2 at 17-18, ECF No. 77-1 at 34-37. Accordingly, Claim 3 is procedurally defaulted as to that theory only.

## V.  MOOTNESS

Respondents argue that allegations in Flanagan's second amended petition premised on alleged errors in relation to first and second penalty hearings are moot because any such errors were remedied by providing Flanagan with a third penalty hearing. In response, Flanagan argues that allegations of ineffective assistance of counsel and prosecutorial misconduct in the first two penalty hearings are relevant to the third penalty hearing. Be that as it may, two of Flanagan's claims -- Claims 10 and 11 -- are focused exclusively on the second penalty hearing.

Thus Claims 10 and 11 are dismissed as moot. As for allegations regarding the first and second penalty hearing that are embedded in claims ultimately directed at the third penalty hearing, the court will disregard them as appropriate when it rules upon merits.

## VI.  COGNIZABILITY

Respondents argue that Flanagan's claims of ineffective assistance of post-conviction counsel which are asserted throughout his petition must be dismissed as not cognizable in a federal habeas proceeding. Respondents are correct. *See* 28 U.S.C. § 2254(i); *Pennsylvania v. Finley*, 481 U.S. 551,557 (1987) ("[T]he fundamental fairness mandated by the Due Process Clause does not require that the State supply a [post-conviction] lawyer."). Thus, such claims are dismissed.

## VI.  WITHDRAWN CLAIMS

In his response to the motion dismiss, Flanagan withdraws Claim 30 and the portion of Claim 20 relating to instructions on unanimity for mitigating circumstances and unanimity for aggravating circumstances. ECF No. 150 at 134, 207.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 131) in response to petitioner's second amended petition for writ of habeas corpus is GRANTED IN PART AND DENIED IN PART. The following claims in petitioner's second amended habeas corpus petition (ECF No. 127) are dismissed for the reasons discussed above: Claim 1; Claim 2 to the extent it alleges violations of the right to present of defense, confrontation, and compulsory process; Claim 3 to the extent it alleges the deprivation of a state law created liberty interest that is enforceable by the Due Process Clause of the 14th Amendment; Claim 5 (but only paragraphs 6(i), 6(k), 7(e)(10), 27, 33, and 41); Claim 10, and Claim 11.

In addition, any claim alleging ineffective assistance of appellate counsel not properly exhausted in Flanagan's first state habeas proceeding, as described above, is dismissed as is any claim alleging ineffective assistance of appellate counsel for failing to raise an ineffective assistance of trial counsel claim and any claim alleging ineffective assistance of state post-conviction counsel. Also, all unexhausted legal theories included within otherwise exhausted claims, as described above, are dismissed. Claim 30 and the portion of Claim 20 relating to instructions on unanimity for mitigating circumstances and unanimity for aggravating circumstances are dismissed without prejudice. In all other respects, respondents' motion to dismiss is denied.

**IT IS FURTHER ORDERED** that respondents shall file an answer within **120 days** from the entry of this order, responding to the remaining claims in petitioner's second amended habeas corpus petition.

**IT IS FURTHER ORDERED** that, in all other respects, the schedule set forth in the scheduling order of June 27, 2017 (ECF No. 116), shall remain in effect.

DATED: March 31, 2020

_____
UNITED STATES DISTRICT JUDGE